U.S. DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

AUG 19 2013

FILED

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 12-CR-167-03-SM |
| | ) | |
| QUENTIN SIMON | ) | |

**PLEA AGREEMENT**

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the United States of America by its attorney, John P. Kacavas, the United States Attorney for the District of New Hampshire, and the defendant, Quentin Simon, and the defendant's attorney, Paul J. Garrity, Esquire, enter into the following Plea Agreement:

1. **The Plea and The Offense**.

The defendant agrees to plead guilty to Count Six of the indictment charging the defendant with being an Unlawful User in Possession of a Firearm in violation of Title 18 U.S.C. §922 (g)(3) and Count Seven of the indictment charging him with Possession with Intent to Distribute Cocaine Base in violation of Title 21 U.S.C. §841(a)(1). In exchange for the defendant's pleas of guilty, the United States agrees to recommend a sentence at the low end of the applicable advisory guidelines range.

2. **The Statute and Elements of the Offense.**

   A. <u>Unlawful User in Possession of a Firearm (18 U.S.C. §922(g)(3).</u>

Title 18, United States Code, Section 922(g)(3) provides, in pertinent part:

It shall be unlawful for any person-

(1) who is an unlawful user of or addicted to any controlled substance (as

defined in section 102 of the Controlled Substance Act (21 U.S.C. 802) to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

The defendant understands that the offense has the following elements, each of which the United States would be required to prove beyond a reasonable doubt at trial:

First, that the defendant was an unlawful user of a controlled substance;

Second, that the defendant knowingly possessed the firearm described in the indictment while he was an unlawful user of a controlled substance;

Third, that the firearm was connected with interstate commerce.

**This instruction is based upon the Model Criminal Jury Instructions for the District Courts of the Eighth Circuit. No. 6.18.922B.**

B.  Possession with Intent to Distribute Cocaine Base 21 U.S.C.§841(a)(1)

Title 21, United States Code, Section 841(a) provides, in pertinent part:

(a) Unlawful acts

Except as authorized by this subchapter, it shall be unlawful for any person to knowingly or intentionally–

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute or dispense, a controlled substance; . . .

The defendant understands that the offense has the following elements, each of which the United States would be required to prove beyond a reasonable doubt at trial:

First, that the defendant possessed, either actually or constructively, a quantity of cocaine base, a Schedule II controlled substance;

Second, the defendant did so with a specific intent to distribute the cocaine base;

Third, that the defendant did so knowingly and intentionally.

**This instruction is based upon <u>United States v. Latham</u>, 874 F.2d 852, 863 (1st Cir. 1989); see also <u>United States v. Akinola</u>, 985 F.2d 1105, 1109 (1st Cir. 1993).**

3. **Offense Conduct**.

On October 12, 2010, the Boston Police Department recovered a Ruger, model T97DC, .45 caliber pistol with an obliterated serial number. The Boston Police Crime Laboratory successfully restored the serial number of the firearm. A subsequent trace of the serial number revealed that it was purchased by co-defendant Thomas J. Dunn on March 26, 2010 at Wildlife Taxidermy and Sport Center, LLC located in Manchester, New Hampshire.

Special Agent Brian Oppedisano and Special Agent James Mercer traveled to Wildlife Taxidermy and Sports Center LLC and reviewed the stores acquisition and disposition book. The book revealed that co-defendant Dunn had purchased four firearms. SA Oppedisano also reviewed records from Riley's Sport Shop, Inc. and learned that co-defendant Dunn had purchased two firearms, including a Smith &Wesson, model SW40VE, .40 caliber pistol bearing serial number DTT2563.

SA Oppedisano and SA Mercer subsequently interviewed co-defendant Dunn who admitted to purchasing the above-mentioned firearms and that he had lied on ATF Form 4473. Co-defendant Dunn advised the agents that the Smith &Wesson, model SW40VE, .40 caliber pistol bearing serial number DTT2563 was currently in the possession of co-defendant Willie Ortiz.

Co-defendant Dunn stated that while he was working at Walmart in 2007 in Manchester, New Hampshire he met and became friends with Ortiz. According to Dunn, he and Ortiz regularly hung out together. Co-defendant Dunn stated that he purchased the above-mentioned

Smith & Wesson .40 caliber pistol for himself but allowed Ortiz to borrow it. Co-defendant Dunn explained that Ortiz borrowed the firearm approximately one week earlier and still had possession of the firearm.

On August 19, 2011, co-defendant Dunn received a recorded telephone call from Ortiz wherein Ortiz agreed to have co-defendant Dunn come by and pick up the firearm. Prior to the meeting, the agents searched co-defendant Dunn with negative results. ATF conducted surveillance at Ortiz residence and observed co-defendant Dunn enter and exit the building. Co-defendant Dunn met with the agents and handed them the Smith & Wesson .40 caliber pistol.

According to co-defendant Dunn, when he entered the building he walked up to the third floor apartment and entered the apartment. He spoke with Ortiz and followed Ortiz to a rear bedroom. Ortiz retrieved the Smith & Wesson .40 caliber pistol from underneath the mattress and handed it to co-defendant Dunn who unloaded the gun. Ortiz showed co-defendant Dunn a second handgun. Co-defendant Dunn stated that Ortiz retrieved the second gun from the living room located in the front side of the apartment. Based on the above information, a search warrant was authorized and executed at the residence.

As a result of the search warrant, the agents seized a Ruger, model P345, .45 caliber pistol bearing serial number 664-25682; two small plastic bags containing a white rock like substance; one box of glad sandwich bags; a digital scale; and a utility bill and a Visa debit card in the name of defendant Quentin L Simon from defendant Simon's bedroom. A subsequent analysis of the white rock like substance tested positive for .42 grams of cocaine base. The agents also seized a Ruger magazine from the kitchen.

Prior to executing the search warrant, the agents found two females in the apartment.

After executing the search warrant, the agents interviewed the two females who both stated that the defendant and co-defendant Ortiz sold small quantities of crack cocaine.

On September 13, 2011, the agents interviewed defendant. The agents explained to Simon that he was not under arrest and that he was free to leave at any time. Simon stated that he understood and voluntarily agreed to speak with the agents.

Simon stated that he moved into the third floor apartment of 461 Beech St. in Manchester around the beginning of August 2011. Simon admitted that he shared the front bedroom with his girlfriend. He also stated that his friend Willie Ortiz and his girlfriend resided in the apartment and shared the rear bedroom.

Simon admitted that since arriving in Manchester, he sold crack cocaine to make some money. Simon admitted that the crack cocaine, scale and baggies found during the search warrant belonged to him. According to Simon, he routinely brought around $300.00 worth of crack cocaine per week, approximately 5 grams. Simon explained that he would then separate the crack cocaine into 1/2 gram quantities which he sold for $40.00 each.

Simon also admitted that the pistol recovered during the search warrant belonged to him. Simon stated that he had smoked marijuana since he was about 12 years old and that he smoked marijuana on a daily basis for several years.

None of the firearms reference above were manufactured in the State of New Hampshire and therefore have traveled through interstate commerce.

4. **Penalties, Special Assessment and Restitution**.

The defendant understands that the penalties are:

A. A maximum prison term of 10 years on Count Six and a maximum prison term of twenty years on Count Seven;

B. A maximum fine of $250,000.00 (18 U.S.C. §3571) on Count Six and a maximum fine of $1,000,000.00 (21 U.S.C. §841) on Count Seven; and

C. A term of supervised release of not more than 3 years on Count Six and a term of supervised release of at least three years on Count Seven. The defendant understands that the defendant's failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring the defendant to serve in prison all or part of the term of supervised release, with no credit for time already spent on supervised release (18 U.S.C. §3583).

The defendant also understands that he will be required to pay a special assessment of $100 for each count of conviction, at or before the time of sentencing; and that the Court may order him to pay restitution to the victim of the offense, pursuant to 18 U.S.C. § 3663 or §3663A.

5. **Sentencing and Application of the Sentencing Guidelines**.

The defendant understands that the Sentencing Reform Act of 1984 applies in this case and that the Court is required to consider the United States Sentencing Guidelines as advisory guidelines. The defendant further understands that he has no right to withdraw from this Plea Agreement if the applicable advisory guideline range or his sentence is other than he anticipated.

The defendant also understands that the United States and the United States Probation Office shall:

A. Advise the Court of any additional, relevant facts that are presently known or may subsequently come to their attention;

B. Respond to questions from the Court;

C. Correct any inaccuracies in the pre-sentence report;

D. Respond to any statements made by him or his counsel to a probation officer or to the Court.

The defendant understands that the United States and the Probation Office may address the Court with respect to an appropriate sentence to be imposed in this case.

The defendant acknowledges that any estimate of the probable sentence or the probable sentencing range under the advisory Sentencing Guidelines that he may have received from any source is only a prediction and not a promise as to the actual sentencing range under the advisory Sentencing Guidelines that the Court will adopt.

6. **Acceptance of Responsibility**.

The United States agrees that it will not oppose an appropriate reduction in the defendant's adjusted offense level, under the advisory Sentencing Guidelines, based upon the defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the offense. The United States, however, may oppose any adjustment for acceptance of responsibility if the defendant:

- A. Fails to admit a complete factual basis for the plea at the time he is sentenced or at any other time;

- B. Challenges the United States' offer of proof at any time after the plea is entered;

- C. Denies involvement in the offense;

- D. Gives conflicting statements about that involvement or is untruthful with the Court, the United States or the Probation Office;

- E. Fails to give complete and accurate information about his financial status to the Probation Office;

- F. Obstructs or attempts to obstruct justice, prior to sentencing;

G. Has engaged in conduct prior to signing this Plea Agreement which reasonably could be viewed as obstruction or an attempt to obstruct justice, and has failed to fully disclose such conduct to the United States prior to signing this Plea Agreement;

H. Fails to appear in court as required;

I. After signing this Plea Agreement, engages in additional criminal conduct; or

J. Attempts to withdraw his guilty plea.

The defendant understands and agrees that he may not withdraw his guilty plea if, for any of the reasons listed above, the United States does not recommend that he receive a reduction in his sentence for acceptance of responsibility.

The defendant also understands and agrees that the Court is not required to reduce the offense level if it finds that he has not accepted responsibility.

If the defendant's offense level is sixteen or greater, and he has assisted the United States in the investigation or prosecution of his own misconduct by timely notifying the United States of his intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently, the United States will move, at or before sentencing, to decrease the defendant's base offense level by an additional one level pursuant to U.S.S.G. § 3E1.1(b).

7. **Waiver of Trial Rights and Consequences of Plea**.

The defendant understands that he has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent him. The defendant also understands that he has the right:

A. To plead not guilty or to maintain that plea if it has already been made;

B.     To be tried by a jury and, at that trial, to the assistance of counsel;

C.     To confront and cross-examine witnesses;

D.     Not to be compelled to provide testimony that may incriminate him; and

E.     To compulsory process for the attendance of witnesses to testify in his defense.

The defendant understands and agrees that by pleading guilty he waives and gives up the foregoing rights and that upon the Court's acceptance of the his guilty plea, he will not be entitled to a trial.

The defendant understands that if he pleads guilty, the Court may ask him questions about the offense, and if he answers those questions falsely under oath, on the record, and in the presence of counsel, his answers will be used against him in a prosecution for perjury or making false statements.

8.   **<u>Acknowledgment of Guilt; Voluntariness of Plea</u>**.

The defendant understands and acknowledges that he:

A.     Is entering into this Plea Agreement and is pleading guilty freely and voluntarily because he is guilty;

B.     Is entering into this Plea Agreement without reliance upon any promise of benefit of any kind except as set forth in this Plea Agreement;

C.     Is entering into this Plea Agreement without threats, force, intimidation, or coercion;

D.     Understands the nature of the offense to which he is pleading guilty, including the penalties provided by law; and

E.     Is completely satisfied with the representation and advice received from his undersigned attorney.

9. **Scope of Agreement**.

The defendant acknowledges and understands that this Plea Agreement binds only the undersigned parties and cannot bind any other non-party federal, state or local authority. The defendant also acknowledges that no representations have been made to him about any civil or administrative consequences that may result from the his guilty plea. The defendant understands such matters are solely within the discretion of the specific non-party government agency involved. The defendant further acknowledges that this Plea Agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving the defendant.

10. **Collateral Consequences**.

The defendant understands that as a consequence of his guilty plea he will be adjudicated guilty and may thereby be deprived of certain federal benefits and certain rights, such as the right to vote, to hold public office, to serve on a jury, or to possess firearms.

11. **Satisfaction of Federal Criminal Liability; Breach**.

The defendant's guilty plea, if accepted by the Court, will satisfy his federal criminal liability in the District of New Hampshire arising from his participation in the conduct that forms the basis of the indictment in this case. The defendant understands that if, before sentencing, he violates any term or condition of this Plea Agreement, engages in any criminal activity, or fails to appear for sentencing, the United States may consider such conduct to be a breach of the Plea Agreement and may withdraw therefrom.

12. **Waivers.**

A.      **Appeal.**

The defendant understands that he has the right to challenge his guilty plea and/or sentence on direct appeal. By entering into this Plea Agreement the defendant knowingly and voluntarily waives his right to challenge on direct appeal:

1. His guilty plea and any other aspect of his conviction, including, but not limited to, adverse rulings on pretrial suppression motion(s) or any other adverse disposition of pretrial motions or issues; and

2. The sentence imposed by the Court if within, or lower than, the guideline range determined by the Court, or if it is imposed pursuant to a minimum mandatory sentence.

The defendant's waiver of his rights does not operate to waive an appeal based upon new legal principles enunciated in Supreme Court or First Circuit case law after the date of this Plea Agreement that have retroactive effect; or on the ground of ineffective assistance of counsel in the negotiation of this Plea Agreement or at the sentencing hearing.

B. **Collateral Review**.

The defendants understands that he may have the right to challenge his guilty plea and/or sentence on collateral review, e.g., a motion pursuant to 28 U.S.C. §§ 2241 or 2255. By entering into this Plea Agreement, the defendant knowingly and voluntarily waives his right to collaterally challenge:

1. His guilty plea, except as provided below, and any other aspect of his conviction, including, but not limited to, adverse rulings on pretrial suppression motion(s) or any other adverse disposition of pretrial motions or issues; and

2. The sentence imposed by the Court if it falls within, or lower than, the guideline range as determined by the Court, or if it is imposed pursuant to a minimum mandatory sentence.

The defendant's waive of his right to collateral review does not operate to waive a collateral challenge to his guilty plea on the ground that it was involuntary or unknowing, or on the ground of ineffective assistance of counsel in the negotiation of the Plea, Plea Agreement or the sentencing hearing.  The defendant's waiver of his right collateral review also does not operate to waive a collateral challenge based on new legal principles enunciated in Supreme Court or First Circuit case law decided after the date of this Plea Agreement that have retroactive effect.

C.   **Freedom of Information and Privacy Acts**.

The defendant hereby waives all rights, whether asserted directly or through a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of the case(s) underlying this Plea Agreement, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. §552, or the Privacy Act of 1974, 5 U.S.C. §522a.

D.   **Appeal by the Government**.

Noting in this Plea Agreement shall operate to waive the rights or obligations of the Government pursuant to pursue an appeal s authorized by law.

13.  **No Other Promises**.

The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this Plea Agreement or revealed to the Court, and none will be entered into unless set forth in writing, signed by all parties, and submitted to the Court.

14.  **Final Binding Agreement**.

None of the terms of this Plea Agreement shall be binding on the United States until this Plea Agreement is signed by the defendant and the defendant's attorney and until it is signed by the United States Attorney for the District of New Hampshire, or an Assistant United States Attorney.

15. **Agreement Provisions Not Severable.**

The United States and the defendant understand and agree that if any provision of this Plea Agreement is deemed invalid or unenforceable, then the entire Plea Agreement is null and void and no part of it may be enforced.

JOHN P. KACAVAS
United States Attorney

Date: 8/19/13

By: *[signature]*
Debra M. Walsh
Assistant U.S. Attorney
N.Y. Bar # 2369627
53 Pleasant St., 4th Floor
Concord, NH 03301
(603) 225-1552
deb.walsh@usdoj.gov

The defendant, Quentin Simon, certifies that he has read this 13-page Plea Agreement and that he fully understands and accepts the terms thereof.

Date: 8/19/13

*[signature]*
Quentin Simon, Defendant

I have read and explained this 13-page Plea Agreement to the defendant, and he has advised me that he understands and accepts its terms.

Date: 8/19/13

*[signature]*
Paul Garrity, Esquire
Attorney for Quentin Simon

-13-